PAUL A. BONIN, Judge.
| T Douglas Paulson pled guilty to 200 counts of possession of pornography involving juveniles and in exchange, the prosecution agreed to a sentencing cap of 15 years imprisonment. The trial judge imposed sentences of twelve years and six months at hard labor on each count, to run .concurrently. Mr. Paulson now appeals these sentences and raises two assignments of error. He does not assign any *363 errors relating to his guilty pleas or convictions.
Mr. Paulson first assigns as error that his concurrent sentences of twelve years and six months, while legal, are nonetheless excessive under Article 1, Section 20 of the Louisiana Constitution. Mr. Paul-son next assigns as error that his trial attorney rendered ineffective assistance under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Louisiana Constitution. Specifically, Mr. Paulson claims that counsel’s performance was deficient and that he was prejudiced at sentencing by his attorney’s decision to submit a copy of the psychological evaluation report to the trial court, which contained evidence of several unad-judicated sexual offenses. He contends that, absent the erroneous 12introduction of other crimes evidence, the trial judge would have sentenced him to a lesser term of imprisonment. Notably, Mr. Paulson does not claim that counsel rendered ineffective assistance during plea negotiations, which resulted in the 15-year cap.
First, as to defendant’s claim of excessive sentences, we conclude that the issue is barred by the operation of La. C.Cr.P. art. 881.2. We next review defendant’s ineffectiveness claim under the well-established Strickland v. Washington[1] standard and conclude that counsel’s introduction of the report at sentencing did not constitute ineffective assistance. Accordingly, we affirm Mr. Paulson’s concurrent sentences for possession of pornography involving juveniles.[2]
We explain our decision in greater detail below.
I
Following an undercover investigation by law enforcement, Mr. Paulson, a 65-year old Geographic Information Systems Analyst for the city of New Orleans, was arrested and charged with 200 counts of possession of pornography involving juveniles, in violation of La. R.S. 14:81.1. The statute defines “pornography [¡¡involving juveniles” as “any photograph, videotape, film, or other reproduction, whether electronic or otherwise, of any sexual performance involving a child under the age of seventeen.” La. R.S. 14:81.1 B(8). “Sexual performance” is defined as “any performance or part thereof that includes actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals or anus.” La. R.S. 14:81.1 B(10). The sentencing range for a conviction of possession of pornography involving juveniles is five to twenty years imprisonment at hard labor. See La. R.S. 14:81.1. It should be noted that the legislature amended the sentenc *364 ing provisions in 2012, increasing the previous range of two to ten years to the current range of five to twenty years. See 2012 La. Sess. Law Serv. Act 446.
On June 12, 2014, Mr. Paulson pled guilty as charged, with the agreement that the trial judge would order a pre-sentence investigation report and that Mr. Paulson’s sentencing exposure would be capped at 15 years. Before Mr. Paulson entered his guilty pleas, defense counsel requested a psychiatric evaluation by Dr. Alicia Pelleg-rin, a licensed psychologist, to be conducted at the defendant’s expense.
The examination occurred at Orleans Parish Prison, during which Mr. Paulson revealed a lengthy history of sexually deviant acts, beginning in his teenage years and continuing throughout adulthood. Salient incidents included acts of exhibitionism and voyeurism; being accused of rape in 1974 (he apparently was not convicted); the molestation of a nine-year old girl where he touched her breast Land put her hand on his penis; and amassing a large collection of child pornography throughout the years. In her report, Dr. Pellegrin noted Mr. Paulson’s “total honesty and forthrightness” regarding his past behavior, and emphasized that his openness made him an “excellent candidate for treatment.” She found that his attributes and supportive family gave him a high likelihood of a successful recovery, which she noted was “a factor that should have a significant impact on his sentence.” She further found it “imperative” that he have access to a sex offender treatment program, group psychotherapy, and individual treatment for depression, low self-esteem, and pornography addiction.
Mr. Paulson’s attorney submitted Dr. Pellegrin’s report in its entirety to the trial judge. Accompanying the report was a pre-sentencing memorandum, which highlighted defendant’s cooperation with law enforcement, his good relationship with his family, his mental health and depression issues, and his high potential for rehabilitation, as assessed by Dr. Pellegrin. Counsel also submitted letters from Mr. Paulson’s family members, emphasizing the defendant’s good nature and his need for treatment over punishment. At the sentencing hearing, counsel called Mr. Paulson’s three children to make statements on his behalf, all of whom made pleas for a lenient sentence. Mr. Paulson also took the stand, acknowledging his wrongful behavior and expressing his willingness and desire to seek treatment.
Prior to imposing sentence, the trial judge noted that she had reviewed the pre-sentence investigation report submitted by the Division of Probation and |5Parole, as well as the report from Dr. Pellegrin and the defense’s memorandum.[3] She expressed concern about Mr. Paulson’s risk of recidivism and the potential harm to the community, children specifically, should his treatment be unsuccessful. Noting the statutory sentencing range and the agreed-upon sentencing cap, the trial judge imposed a term of twelve years and six months imprisonment at hard labor.
II
In this part, we first address Mr. Paulson’s claim that the trial judge imposed constitutionally excessive sentences.
*365 A
At the outset, we note that, despite appellate counsel’s contentions, the federal constitution does not expressly grant a criminal defendant in Louisiana the right to a review of his sentences for excessiveness. See U.S. Const, amend. VIII (“Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.”); see also State v. Mosby, 14-0215, p. 9 (La.App. 4 Cir. 11/26/14), 155 So.3d 99, 107.
Mr. Paulson concedes that ordinarily, he would not be able to seek review of his sentences. See La. C.Cr.P. art. 881.2 A(2) (A defendant “cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.”); see also State v. Young, 96-0195, pp. 64-5 (La.10/15/96), 680 So.2d 1171, 1173-74 (statutory bar to review under La. C.Cr.P. art. 881.2 also applies to plea agreements involving agreed-upon sentencing caps). Further, Mr. Paulson does not contend that he specifically reserved his right to appeal his sentences or that such a reservation was part of his plea agreement. Cf. State v. Crosby, 338 So.2d 584 (1976). He argues, however, that the trial judge’s equivocal language regarding his right to appeal warrants appellate review of his sentences for excessiveness.
In this case, Mr. Paulson’s sentencing cap of 15 years was set forth in the record at the time of his plea. During the plea colloquy, when asked if he understood that he was “waiving [his] rights to trial and appeal,” Mr. Paulson replied in the affirmative. Subsequently, the trial judge informed him that he had a “30-day limit to appeal this conviction.” The guilty plea form, signed and initialed by Mr. Paulson, also stated that he had 30 days to appeal his conviction. During the sentencing hearing, the trial judge stated that a “higher Court [ ] may review my sentence.” [4]
In support of his argument that we should review his sentences, notwithstanding the statutory bar, Mr. Paulson cites State v. Foster, 42,212 (La.App. 2 Cir. 8/15/07), 962 So.2d 1214, and State v. Smith, 47,800 (La.App. 2 Cir. 2/27/13), 110 So.3d 628. In both cases, the defendants entered into plea agreements with sentencing caps. During the guilty plea colloquy in Foster, the trial judge informed the defendant that he was waiving his right to appeal, “except |7as to the amount of the sentence.” Foster, 42,212, pp. 5-8, 962 So.2d at 1217-18. The Second Circuit found that Foster had not intelligently waived his right to appeal his sentence and therefore the court reviewed the sentence for excessiveness. The trial judge in Smith informed the defendant during the plea colloquy that he “may not be allowed to appeal ... the length or severity of [the] sentence.” Smith, 47,800, pp. 2-3, 110 So.3d at 630. The Smith court, noting its decision in Foster, found a “potential question” as to whether the trial judge’s statement affected the voluntariness of Smith’s plea; it therefore reviewed the sentences for excessiveness.
We first note that neither the Foster nor Smith courts granted relief on the basis of excessiveness of sentence. We also note that no analogous jurisprudence is found in our circuit or the Louisiana Supreme Court. Further, in both Foster and Smith, the right to appeal the sentence was stated during the plea colloquy. Here, although the trial judge’s language may have created confusion as to whether *366 Mr. Paulson had the right to appeal his convictions, she does not specifically inform hiip that he has the right to appeal his sentences. Notably, the Second Circuit in State v. Fizer, 43,271 (La.App. 2 Cir. 6/4/08), 986 So.2d 243, declined to follow its decision in Foster because the trial judge only mentioned the right to appeal the sentence during sentencing and not during the plea colloquy; the court therefore found no risk of an involuntary plea. The instant case is comparable to Fizer. And, although Mr. Paulson does not explicitly claim that he entered his pleas involuntarily, it is necessarily implied by his argument that he is entitled to appeal |shis sentences. Here, however, Mr. Paulson was not informed that he had the right to appeal his sentences during the plea colloquy; therefore, the judge’s statements referencing review of his sentences during the sentencing hearing had no bearing on the voluntariness of his pleas.[5] Further, there is nothing in the record that would indicate Mr. Paulson’s plea agreement encompassed a reservation of the right to appeal his sentences.
Based on the foregoing, we find that Mr. Paulson is not entitled to review of his sentences, as he pled guilty to an agreed-upon sentencing cap which was set forth in the record at the time of his plea.[6]

Jill

We next address Mr. Paulson’s claim of ineffective assistance of counsel at sentencing. He contends that counsel’s introduction of the report containing the other crimes evidence constituted deficient performance and did not fall under any reasonable strategy. Mr. Paulson also argues the alleged error prejudiced him, as he would not have received a twelve-and-a- *367 half-year sentence, but for counsel’s introduction of, and the trial judge’s reliance on, Dr. Pellegrin’s report. Importantly, Mr. Paulson does not contend that counsel was ineffective during the plea negotiations.
A
Generally, ineffective-assistance-of-counsel claims are more properly raised in an application for post-conviction relief where the district court can conduct a full evidentiary hearing on the matter, if one is warranted. See State v. Leger, 05-0011, p. 44 (La.7/10/06), 936 So.2d 108, 142; see also State v. Small, 13-1334, p. 13 (La.App. 4 Cir. 8/27/14), 147 So.3d 1274, 1283. Nevertheless, where the record contains evidence sufficient to decide the issue, and it is raised on appeal by an assignment of error, courts may consider the issue in the interest of judicial economy. See Leger, 05-0011, p. 44, 936 So.2d at 142. A claim of ineffective assistance of counsel at sentencing, however, is not cognizable on collateral review, when, as here, the sentence imposed by the trial judge is within the authorized range of the sentencing statutes. See State v. Thomas, 08-2912 (La.10/16/09), 19 So.3d 466 (“relator’s claims that the court imposed an excessive Imsentence and that he received ineffective assistance of counsel at sentencing are not cognizable on collateral review”) (emphasis added). The Louisiana Supreme Court has held that La. C.Cr.P. art. 930.3, which sets forth the grounds upon which post-conviction relief may be granted, “provides no basis for review of claims of excessiveness or other sentencing error post-conviction.” State ex rel. Melinie v. State, 93-1380 (La.1/12/96), 665 So.2d 1172; see also State v. Cotton, 09-2397, p. 2 (La.10/15/10), 45 So.3d 1030, 1031 (per curiam) (claim that counsel rendered ineffective assistance at habitual offender adjudication is not cognizable on collateral review so long as sentence imposed falls within range of sentencing statute).
Therefore, because Mr. Paulson’s ineffective-assistance-of-counsel-at-sentencing claim is not cognizable in a post-conviction proceeding, and because the record provides sufficient evidence to decide the issue, we must consider his ineffectiveness claim on direct review. Cf. State v. Boyd, 14-0408, pp. 8-9 (La.App. 4 Cir. 2/11/15), 164 So.3d 259, 264 (finding ineffective-assistance-of-counsel-at-sentencing claim cognizable on direct review, but remanded for evidentiary hearing because record was insufficient to decide issue). We also note that a guilty plea does not waive a claim of ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); State v. West, 09-2810, p. 1 (La. 12/10/10), 50 So.3d 148, 149 (per curiam).
B
|-nBoth the Louisiana and United States Constitutions afford a criminal defendant the right to effective assistance of counsel at sentencing. See U.S. Const, amend. VI; La. Const, art. I, 13. In order to be entitled to a new sentencing hearing on the basis that his counsel’s assistance was constitutionally ineffective, Mr. Paulson must establish both prongs of the test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Mr. Paulson must show that his counsel’s performance was deficient, which requires a showing that counsel made errors so serious that he or she was not functioning ás the “counsel” guaranteed by the Sixth Amendment. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Second, Mr. Paulson must prove that he was prejudiced by counsel’s deficient performance. See id. Unless Mr. Paulson succeeds in *368 making both showings, however, we cannot find that his sentence “resulted from a breakdown in the adversary process that renders the result unreliable.” Id. Notably, a court need not “address both components of the inquiry if the defendant makes an insufficient showing on one.” Id. at 697, 104 S.Ct. 2052.
To demonstrate deficient performance, Mr. Paulson must show that counsel’s “representation fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. The reasonableness of counsel’s performance must be measured “under prevailing professional norms” and “considering all the circumstances.” Id. “Judicial scrutiny of counsel’s performance must be highly deferential.” Id. at 689, 104 S.Ct. 2052. A reviewing court “does not sit to second-guess strategic and tactical choices made by counsel.” State v. Myles, 389 So.2d 12, 31 (La.1979); Small, 13-1334, pp. 1415, 147 So.3d at 1284. Importantly, if an alleged error falls “within the ambit of ligtrial strategy” it does not establish ineffective assistance of counsel. Id. Moreover, the fact that a particular strategy fails does not mean that it was professionally unreasonable. See State v. Woodard, 08-0606, p. 13 (La.5/5/09), 9 So.3d 112, 120, citing to State v. Felde, 422 So.2d 370, 393 (La.1982).
To prove that the claimed errors prejudiced him, Mr. Paulson “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “Even though sentencing does not concern a defendant’s guilt or innocence, ineffective assistance of counsel during a sentencing hearing may result in prejudice within the compass of Strickland ... because ‘any amount of additional jail time has Sixth Amendment significance.’ ” State v. Mills, 13-1901, p. 3 (La.3/21/14); 137 So.3d 8, 10 (per curiam), quoting Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (citations and punctuation omitted). Counsel’s errors at sentencing have prejudiced a defendant when “there is a reasonable probability that the defendant’s sentence would have been significantly less harsh....’” Mills, 13-1901, p. 3, 137 So.3d at 10 (emphasis added); see also Boyd, 14-0408, p. 7, 164 So.3d at 263. To determine such a probability, a reviewing court must take into consideration factors such as “the defendant’s actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.” Mills, 13-131901, p. 3, 137 So.3d at 10, quoting United States v. Segler, 37 F.3d 1131, 1136 (5th Cir.1994).
C
Applying the principles enunciated in Strickland to the instant case, we do not find that Mr. Paulson has established a claim of ineffective assistance of counsel. As stated previously, he does not contend that counsel was ineffective when she negotiated a plea bargain with a sentencing cap of 15 years, which is quite favorable considering his sentencing exposure had he proceeded to trial. See La. R.S. 14:81.1 E(l)(a).[7] The record reveals that counsel *369 prepared extensively for the sentencing hearing and zealously advocated on her client’s behalf. She obtained several letters from Mr. Paulson’s family and submitted them to the court, and had the defendant and his children make statements at the hearing. Admittedly, the psychological report did contain evidence of numerous sexually deviant acts, including an unadjudicated crime involving a nine-year-old child. The other crimes evidence notwithstanding, the report also contained Dr. Pellegrin’s assessment of Mr. Paulson as an excellent candidate for rehabilitation, considering his honesty, his feelings of remorse, his desire to seek treatment, and his strong familial support system.
|uIn cases where the reviewing court has found meritorious a claim of ineffective assistance of counsel at sentencing, the failures were numerous and egregious, and were not found to be products of any reasonable strategy.[8] See Wiggins v. Smith, 539 U.S. 510,. 584-35, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (defense counsel’s failure to investigate and present significant mitigating evidence constituted ineffective assistance); State v. Hamilton, 92-2639, pp. 5-10 (La.7/1/97), 699 So.2d 29, 32-34 (ineffective assistance during sentencing shown by counsel’s failure to make an opening statement, failure to present any mitigating evidence, and failure to plead for a life sentence); State v. Brooks, 94-2438, p. 9 (La.10/16/95), 661 So.2d 1333, 1338-39 (counsel’s failure to investigate and present easily obtainable mitigating evidence was not reasonable strategic decision); State v. Sanders, 93-0001, pp. 26-27 (La.11/30/94), 648 So.2d 1272, 1291-92 (during sentencing phase, counsel’s lackluster opening statement, failure to object to improper other crimes evidence, failure to call witnesses on defendant’s behalf, and failure to make a closing argument constituted ineffective assistance); State ex rel. Busby v. Butler, 538 So.2d 164, 173 (La. 1988) (during sentencing, counsel’s failure to introduce available mitigating evidence, failure to make an opening statement, and failure to plead that defendant’s life be spared constituted ineffective assistance).
|1sNone of the extreme transgressions presented in the foregoing cases are present in Mr. Paulson’s case. Even though counsel knew there was a narrow range of possible sentences, she still made concerted efforts to persuade the judge to impose the minimum sentence. She submitted letters from Mr. Paulson’s family, called his children to speak on his behalf, and arranged a presentencing psychological evaluation. Counsel evidently believed, not unreasonably, that Dr. Pellegrin’s positive assessments in the report would act as beneficial mitigating evidence. The fact that her strategic decision did not result in a more favorable outcome does not render her performance constitutionally deficient. Considering all the circumstances in this case, we cannot say that counsel’s decision to introduce the psychological report “fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
*370 Having concluded that Mr. Paulson has not satisfied the first prong of Strickland, we need not address whether he suffered any resulting prejudice. Nevertheless, Mr. Paulson does not show that, but for counsel’s introduction of the report, his sentence would have been significantly less harsh. Cf. Glover, 531 U.S. at 204, 121 S.Ct. 696 (finding that prejudice resulted from an erroneous sentencing guidelines determination, increasing sentence from 6 to 21 months). “It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.” Strickland, 466 U.S. at 693, 104 S.Ct. 2052. Moreover, the sentencing judge is given wide discretion in the imposition of sentences within the statutory sentencing ranges. See Mosby, 14-0215, p. 10, 155 So.3d at 107. The trial judge in this ease did not impose the maximum sentence possible under Mr. Paulson’s plea agreement. Therefore, despite the defendant’s arguments to the contrary, it is Inconceivable that she did take into consideration the several mitigating factors presented. Considering the foregoing, Mr. Paulson does not show that he suffered prejudice, as contemplated by Strickland and its progeny, as a result of counsel’s decision to introduce the report. As such, we find that Mr. Paulson has not carried his burden of proof to establish an ineffective-assistance-at-senteneing claim.
DECREE
We affirm Douglas Paulson’s 200 twelve- and-a-half-year concurrent sentences for possession of pornography involving juveniles.
AFFIRMED

. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. We have identified one error patent in the sentencing. The sentencing transcript reveals that the trial judge failed to specify that the sentences be served without the benefit of parole, probation, or suspension of sentence, as required by statute. See La. R.S. 14:81.1 E(l)(a). We note that although the minute entry states that the sentences are to be served without such benefits, "when there is a discrepancy between the minute entry and the transcript, the transcript prevails.” State v. Martin, 13-0628, p. 5 (La.App. 4 Cir. 5/28/14), 141 So.3d 933, 937. Nevertheless, the provisions are deemed to be a part of Mr. Paulson’s sentences. See La. R.S. 15:301.1 A; State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799 (La. R.S. 15:301.1 A "self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute”). Therefore, the error is corrected automatically and no further action by us is necessary.

. At the request of the defense, the trial judge placed the pre-sentencing memorandum, which included Dr. Pellegrin’s report, under seal. We issued an order directing the parties to show cause on the issue of why the memorandum and accompanying report should not be unsealed. We then ordered it unsealed. See La. Const, art. I, 22; Copeland v. Copeland, 06-1023, p. 2 (La.6/2/06), 930 So.2d 940, 941; see also State v. Widenhouse, 556 So.2d 187, 190 (La.App. 2 Cir.1990) (listing factors to be considered in sealing of a criminal record.).

. The prosecution did not object to the trial judge's statements referencing an appeal, nor did it raise the issue of preclusion under La. C.Cr.P. art. 881.2 in its brief.

. Though we decline to review Mr. Paulson’s sentences for excessiveness, we note that his sentences are comparable to those in similar cases. See e.g., State v. Dominick, 13-0270 (La.App. 4 Cir. 1/30/14), 133 So.3d 250 (defendant pled guilty to 139 counts of possession of pornography involving juveniles; received concurrent sentences of 10 years); State v. Workman, 14-0559 (La.App. 5 Cir. 4/15/15), 170 So.3d 279 (convicted of one count of possession of pornography involving a juvenile; sentenced to five years imprisonment).
We also note that the United States Supreme Court in 1982 recognized that the child pornography industry is intrinsically linked to the sexual exploitation of children, and causes severe "physiological, emotional, and mental” health issues for the children depicted in the videos and images. The Court also expressed concern that the images created a permanent record of the children's participation and that their distribution exacerbated the harm. See New York v. Ferber, 458 U.S. 747, 758-59, nn. 9-10, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). More recent studies have found that, far from declining, the child pornography in existence has increased exponentially over the years, primarily due to advent of the internet and digital cameras. Current technology has allowed for convenient, anonymous, and inexpensive access to child pornography, which has in turn created a greater demand for such materials. See Michelle Minarcik, The Proper Rémedy for Possession of Child Pornography: Shifting from Restitution to A Victims Compensation Program, 57 N.Y.L. Sch. L. Rev. 941, 958 (2013).
The Louisiana legislature’s concern about the expanding child pornography industry is evidenced by its 2012 amendment to La. R.S. 14:81.1 which doubled the maximum sentences for possession and distribution of pornography involving juveniles. See 2012 La. Sess. Law Serv. Act 446.

. Mr. Paulson pled guilty to 200 separate counts, which, if imposed consecutively, would have been a minimum of 1000 years and maximum of 4000 years imprisonment. See generally State v. Fussell, 06-2595, p. 19-20 (La.1/16/08), 974 So.2d 1223, 1235 (La. *369 R.S. 14:81.1 "evidences a legislative intent to allow a separate conviction on a separate count for each child, in each sexual performance in which that child is victimized, that is captured in any photographs, films, videotapes, or other visual reproductions”).

. We acknowledge that the following examples are capital cases where a sentence of death was imposed. Nevertheless, the Strickland test for a claim of ineffective assistance of counsel at sentencing is applied in both capital and noncapital cases. See Lafler v. Cooper, 566 U.S. -, 132 S.Ct. 1376, 1385-86, 182 L.Ed.2d 398 (2012); see also Glover v. United States, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); Boyd, 14-0408, pp. 4-5, 164 So.3d at 262.